**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RUMEYSA OZTURK,<br><br>               Petitioner,<br><br>       v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, PATRICIA HYDE, Field Office Director,<br>MICHAEL KROL, HSI New England Special Agent in Charge, TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement, and KRISTI NOEM, Secretary of Homeland Security; and MARCO RUBIO, in his official capacity as Secretary of State<br><br>             Respondents. | Civil Action No. 1:25-cv-10695-DJC<br><br>*Leave to file excess pages<br>granted on 4/1/2025* |

## RESPONDENTS' OPPOSITION TO PETITIONER'S
## AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO
## 28 U.S.C § 2241

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Petitioner Rumeysa Ozturk's Amended Petition for Writ of Habeas Corpus (the "Petition"). Doc No. 12.

## INTRODUCTION

Under binding precedent from the Supreme Court and the U.S. Court of Appeals for the First Circuit, this Court lacks habeas jurisdiction over this Petition because Petitioner was not in the District of Massachusetts when she filed her original petition seeking release from U.S. Immigration and Customs Enforcement ("ICE") custody. *See* Declaration of Acting Deputy Field Office Director David T. Wesling, ¶¶ 12-13, attached as Exhibit A ("Wesling Decl.). Instead, at the time of filing, Petitioner was in Vermont, after she had been transferred from Massachusetts

immediately after her arrest on March 25, 2025. *Id.*, ¶¶ 6-8. Petitioner also was not in this District when she filed her Amended Complaint on March 28 as she had been transferred to Louisiana two days prior. *Id.*, ¶¶ 18-19. As this Court is not in Petitioner's district of confinement, it lacks jurisdiction to entertain this action.

In *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004), the Supreme Court made clear an individual challenging her detention through a habeas petition must file that petition in the district where she is detained and must name the custodian detaining her in such district as the respondent. The First Circuit, in *Vasquez v. Reno* similarly held that "an alien who seeks a writ of habeas corpus contesting the legality of his detention by [ICE] normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained." 233 F.3d 688, 690 (1st Cir. 2000). Because Petitioner did not do that, and still has not done that with the filing of her Amended Petition, this Court lacks habeas jurisdiction over this action. *See, e.g.*, *Tham v. Adducci*, 319 F. Supp. 3d 574, 577 (D. Mass. 2018) (Holding that "jurisdiction lies in only one district: the district of confinement."); *Rombot v. Moniz*, 299 F. Supp. 3d 215, 218 (D. Mass. 2017) ("A district court may only grant a petitioner relief when the court is located in the 'district of confinement.'") (quoting *Padilla*, 542 U.S. at 443); *Hernandez v. Lyons*, 1:19-cv-10519-DJC, ECF No. 18 (D. Mass. Oct. 11. 2019) (Allowing motion to dismiss as habeas petitioner "was not in the district when he filed or was pursuing this Petition as is required.").

Additionally, even if Petitioner had properly filed her original petition when she was detained in Massachusetts, this Court would nonetheless lack jurisdiction over this matter under the Immigration and Nationality Act ("INA"). The federal immigration laws strip district courts of jurisdiction over the sorts of governmental decisions challenged in the Petition, including the revocation of Petitioner's student visa and ICE's decision to initiate removal proceedings. The

Department of State revoked Petitioner's visa on March 21, 2025 pursuant to INA Section 221(i), 8 U.S.C. § 1201(i), which allows revocation of a visa at the Secretary of State's discretion.  *See* Doc. No. 12-2, Form I-862, Notice to Appear ("NTA").  Per Section 1201(i), Congress barred judicial review of a visa revocation, specifically stating that "[t]here *shall be no means of judicial review* … of a revocation under this subsection," including through a habeas petition, other than in the context of removal proceedings and only if the visa revocation is the sole basis for removal. (emphasis added).

Petitioner's request for review of ICE's decision to initiate removal proceedings against her is barred by 8 U.S.C. § 1252(g) which strips district courts of jurisdiction "to hear any cause or claim by or on behalf of an alien arising from the decision or action by [ICE] to commence proceedings … against any alien," including constitutional claims.  Courts also lack jurisdiction to review ICE's discretionary decisions to arrest and detain aliens under 8 U.S.C. § 1226(a).  Per 8 U.S.C. § 1226(e), ICE's "discretionary judgment regarding the application of [Section 1226] shall not be subject to review [and] … [n]o court may set aside any action or decision by [ICE] under this section regarding the detention of any alien …".  And finally, 8 U.S.C. §§ 1252(a)(5) and (b)(9) strip "federal courts of jurisdiction to decide legal and factual questions arising from an alien's removal" and instead channel such questions to the courts of appeal via a petition for review.  *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020).

Petitioner is not without recourse to challenge the revocation of her visa and her arrest and detention, but such challenge cannot be made before this Court.  Instead, Petitioner must seek release before an immigration judge and must pursue relief from removal in Immigration Court, before the Board of Immigration Appeals ("BIA"), and eventually before a circuit court if necessary.  But one way or another, this Court lacks jurisdiction over this matter.  And as this

Court lacks jurisdiction over this Petition, Petitioner's request for release on bail pending adjudication of the matter is similarly unwarranted.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

**A.**  <u>**Petitioner's Arrest and Transfer from the District of Massachusetts.**</u>

Petitioner is a native and citizen of Turkey.  Doc. No. 12, ¶ 8.  Petitioner entered the United States pursuant to a student visa.  *Id.*, ¶ 8.  Pursuant to 8 U.S.C. § 1226(a), ICE arrested Petitioner at approximately 5:25 PM on March 25, 2025, after her visa had been revoked by the Department of State under 8 U.SC. § 1201(i).  Wesling Decl., ¶ 5; Doc. No 12-2, NTA. With the revocation of her visa, Petitioner was subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B) as an alien "whose nonimmigrant visa … has been revoked under section 1201(i)."  Doc. No. 12-2.

Prior to the arrest, ICE determined that there was no available bedspace for Petitioner at a facility within the New England region where she could be detained and still appear for a hearing in Immigration Court.  *Id.*, ¶ 6.  ICE therefore decided that Petitioner would be transferred to the South Louisiana Correctional Facility in Basile, Louisiana after her arrest and made necessary transfer and flight arrangements to facilitate custody at that facility.  *Id.*, ¶ ¶ 6, 8.  Transfers out of state, and out of the ERO Boston area of responsibility, are routinely conducted after arrest, due to operational necessity.  *Id.*, ¶ 7.  In accordance with this operational plan, at 5:49 PM on March 25, ICE officials departed Somerville, Massachusetts, and transported Petitioner to Methuen, Massachusetts arriving at 6:22 PM.  *Id.*, ¶ 10.  At 6:36 PM, ICE officials departed from Methuen, Massachusetts and transported Petitioner to Lebanon, New Hampshire.[1]  *Id.*, ¶ 11.  At

---

[1] Methuen, Massachusetts is approximately 2 miles from the New Hampshire border on Interstate I-93.

9:03 PM, ICE officials departed Lebanon, New Hampshire to transport Petitioner to the ICE field office in St. Albans, Vermont.[2]  *Id.*, ¶ 12.  At 10:28 PM, Petitioner arrived at the ICE field office in St. Albans, Vermont.  *Id.*, ¶ 13.   While at the facility in St. Albans, ICE issued Petitioner with a NTA in the Oakdale, Louisiana Immigration Court on April 7, 2025 and charged Petitioner as removable from the United States per 8 U.S.C. § 1227(a)(1)(B).  *Id.*, ¶ 14; Doc. No. 12-2, NTA.

Petitioner spent the night at the ICE field office in St. Albans, Vermont on March 25. Wesling Decl., ¶ 13.  On March 26 at 4:00 AM, ICE officials departed the ICE Field Office in St. Albans and transported Petitioner to the airport in Burlington, Vermont.  *Id.*, ¶ 16.  At 5:31 AM, Petitioner departed the airport in Burlington.  *Id.*, ¶ 17.  At 2:35 PM, Petitioner arrived in Alexandria, Louisiana and was transported to the South Louisiana Correctional Facility in Basile, Louisiana.  *Id.*, ¶¶ 18-19.  At the time of Petitioner's arrest, ICE was not aware of a counsel of record for Petitioner.  *Id.*, ¶ 20.  Once ICE obtained Petitioner's counsel's contact information, it was provided to ERO New Orleans to facilitate Petitioner's communication with counsel.  *Id.* Upon her arrival to the South Louisiana Correctional Facility, Petitioner spoke with counsel.  *Id.* ¶ 21.

### B.  <u>Petitioner's Original Habeas Petition and her Amended Petition.</u>

Petitioner filed her original petition with this Court on March 25, 2025 at 10:01 PM.  Doc. No. 1. Petitioner named as Respondents Patricia Hyde, the Acting Director of ICE's ERO Boston Field Office, Michael Krol, ICE's Boston Homeland Security Investigation's Special Agent in Charge, Todd Lyons, the Acting Director of ICE, and Kristi Noem, the Secretary of Homeland Security.  *Id.*  Petitioner alleged that she was "currently in custody in the District of Massachusetts"

---

[2] Lebanon, New Hampshire is approximately 5 miles from the Vermont border on Interstate I-89.

and that "one or more of the Respondents is her immediate custodian." *Id.*, ¶ 12. But as just detailed, Petitioner was in fact in Vermont, set to be transferred to Louisiana—a decision, again, that was made by ICE officials before any petition was filed. Wesling Decl., ¶¶ 6-8, 10-13.

On March 28, Petitioner filed an Amended Petition. Doc. No. 12. Petitioner added President Donald J. Trump and Secretary of State Marco Rubio as Respondents. *Id.* Petitioner asserts venue is proper in this Court under the theory that she "had been detained in the District of Massachusetts by [ICE] and under the custody and control of ICE officials in Massachusetts at the time of the filing of this petition." *Id.*, ¶ 7. Petitioner added claims under the First Amendment and the Administrative Procedures Act ("APA"), amended her claim under the Fifth Amendment's Due Process Clause, and sought release on bail. *Id.* Petitioner asked the Court order that she be returned to Massachusetts, that she be released, and that the Court find that her arrest violated the First and Fifth Amendments. *Id.* at PRAYER FOR RELIEF.

## <u>ARGUMENT</u>

Petitioner improperly filed her original petition with this Court because Petitioner was not detained in Massachusetts when she filed her action at 10:02 PM on March 25. She also named improper supervisory officials as respondents. Petitioner's Amended Petition is similarly improperly filed in this Court because Petitioner is in custody in Louisiana and this Court lacks jurisdiction over her immediate custodian who has not been named as a respondent. Even if the original petition had been properly filed, dismissal would still be required because this Court lacks jurisdiction to review Petitioner's challenges to the Government's action and to order the requested relief. As such, this Court should dismiss this action without prejudice. If, however, the Court determines transfer of the Petition is appropriate, such transfer must be to the Western District of Louisiana where Petitioner is currently detained.

A. **The Immediate Custodian and District of Confinement Rules Apply to this Petition and Render this Court without Jurisdiction.**

Petitioner's original petition was improperly filed as Petitioner was not detained in Massachusetts when she filed her action at 10:02 PM on March 25 and because she did not name her immediate custodian as a respondent. Petitioner departed Massachusetts shortly after 6:30 PM when ICE officials transported her from Methuen, Massachusetts on the way to Lebanon, New Hampshire before eventually arriving in St. Albans, Vermont later that evening. Wesling Decl., ¶¶ 11-13. Because Petitioner was in Vermont when her original petition was filed, she should have filed her action with the U.S. District Court for the District of Vermont, not this Court.

The Supreme Court explained that when considering "challenges to present physical confinement … the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Padilla*, 542 U.S. at 439. *Padilla* involved a habeas petition filed by a U.S. citizen who was initially detained in the Southern District of New York but then transferred to South Carolina. *Id.* at 431. After Mr. Padilla was transferred, he filed a petition in SDNY, naming President Bush and Secretary Rumsfeld as respondents. *Id.* at 432. The Court confronted the "question whether the Southern District has jurisdiction over Padilla's habeas petition" which required two determinations: "First, who is the proper respondent to the petition? And second, does the Southern District have jurisdiction over him or her?" *Id.* at 434.

Answering the first question, the Supreme Court explained that the habeas statute "provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Id.* (quoting 22 U.S.C. § 2242). The Court stated that "there is generally only one proper respondent to a given prisoner's habeas petition," the immediate custodian who has "the ability to produce the prisoner's body before the habeas court." *Id.* The Court applied its

"longstanding" rules – known as the "district of confinement" and "immediate custodian" rules – and explained that in a challenge to present physical confinement, "the proper respondent is the warden of the facility where the prisoner is held, not the Attorney General or some other remote supervisory official." *Id.* at 435. The Court acknowledged that while Mr. Padilla's detention was "undeniably unique in many respects, it is at bottom a simple challenge to physical custody imposed by the Executive…." *Id.* at 441. Without evidence that "there was any attempt to manipulate" his transfer or that government was hiding his location, the Court explained that his "detention is thus not unique in any way that would provide arguable basis for a departure from the immediate custodian rule." *Id.* at 441-42.

As to the question of the proper district court to consider the petition, the Court affirmed the applicability of the traditional rule "that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 443. Because Mr. Padilla was moved from the Southern District of New York before the petition was filed, "the Southern District never acquired jurisdiction over Padilla's petition.". *Id.* at 441-42.[3] In summary, the *Padilla* Court explained that whenever a "habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447.

---

[3] As such, the *Padilla* Court distinguished the factual circumstances before the Court from those at issue in *Ex parte Endo,* 323 U.S. 283 (1944) where the Supreme Court had created an exception to its general rule for cases in which the petitioner properly filed the habeas petition against the immediate custodian and thereafter was transferred outside the district court's territorial jurisdiction. Here, as in *Padilla, Endo* is not applicable because Petitioner never properly filed her habeas petition because she was not detained in Massachusetts when it was filed.

Four years prior to the *Padilla* decision, the First Circuit in *Vasquez v. Reno* held that a habeas petitioner challenging his immigration detention must file his petition in the district of confinement and must name his immediate custodian in that district as the respondent. *Vasquez*, 233 F.3d at 696. The First Circuit rejected the argument that a supervisory official such as the Attorney General was the proper respondent, holding that "as a general rule, the Attorney General is neither the custodian of such an alien in the requisite sense nor the proper respondent to a habeas petition."[4] *Id.* at 689.

In *Vasquez*, an alien was detained in Massachusetts before transfer to Louisiana. *Id.* at 690. The petitioner filed in the District of Massachusetts, naming as respondents the Attorney General, the Commissioner of the Immigration and Nationality Service ("INS"), and the district director of the INS's Boston office. *Id.* He did not name, however, the INS official who maintained his custody in Louisiana. *Id.* The First Circuit held that the district court erred in exercising jurisdiction because the petitioner was not detained in Massachusetts when he filed and due "to the petitioner's failure to name his true custodian (the INS district director for Louisiana) as the respondent to his petition." *Id.* The Court distinguished the Supreme Court's decision in *Endo*, explaining that such petition was "properly-filed," unlike Mr. Vasquez's petition which was filed "in a jurisdiction where neither he nor his immediate custodian was physically present." *Id.* at 695.

The First Circuit explained that "Congress has stipulated that a writ of habeas corpus granted by a district court 'shall be directed to the person having custody of the person detained.'" *Id.* (quoting 28 U.S.C. § 2243). Per the Court, "[t]his means, of course, that the

---

[4] At the time of the *Vasquez* decision, immigration detainees were held by the Immigration and Naturalization Service which was part of the U.S. Department of Justice.

court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody." *Id.* at 690.  As it specifically concerned aliens in immigration detention, the Court found that, as in in the prison context, the proper respondent is not a supervisory official such as the Attorney General or the head of an agency, but the immediate custodian of the alien, *i.e.* the individual "who holds the petitioner in custody."  *Id.* at 691. As such, the First Circuit held that "an alien who seeks a writ of habeas corpus contesting the legality of his detention by [ICE] normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained."  *Id.*  Otherwise, "allowing alien habeas petitioners to name the Attorney General … will encourage rampant forum shopping."  *Id.* at 694.

Courts within this District routinely find jurisdiction wanting over habeas petitions that are filed by ICE detainees outside of Massachusetts.  *See Kantengwa v. Brackett*, No. 19-CV-12566-NMG, 2020 WL 93955, at *1 (D. Mass. Jan. 7, 2020) ("Because the District of Massachusetts is not the district of [petitioner's] confinement, jurisdiction is lacking."); *Tham*, 319 F. Supp. 3d at 577 ("jurisdiction lies in only one district: the district of confinement."); *Rombot v. Moniz*, 299 F. Supp. 3d at 218 ("A district court may only grant a petitioner relief when the court is located in the 'district of confinement.'") (quoting *Padilla*, 542 U.S. at 443).

Because Petitioner was not detained in Massachusetts when she filed her original petition and because she failed to name her immediate custodian, this Court lacks jurisdiction over this matter.  Petitioner's Amended Petition is similarly improperly filed in this Court, because it fails to name her immediate custodian in Louisiana, and it is not filed in her district of confinement. Given this Court lacks habeas jurisdiction under the above rules, the proper course is for this Court to dismiss the action.

### 1. __Petitioner failed to name her immediate custodian.__

Petitioner named improper respondents in her original petition because she named supervisory officials, rather than her immediate custodian in Vermont when the petition was filed. Her Amended Petition suffers from the same flaws as she adds additional supervisory officials but fails to name her immediate custodian in Louisiana.

Courts within this district routinely hold that they lack jurisdiction over a habeas petition if the alien names improper respondents such as supervisory officials like the ICE Boston Field Office Director ("FOD"), even if this individual provides oversite throughout the New England region. For example, in *Duy Tho Hy v. Gillen*, 588 F. Supp. 2d 122, 124-25 (D. Mass. 2008), the Court held that the ICE FOD was not a proper party, explaining that "[b]ecause the petitioner's *immediate* custodian is the only proper respondent, a supervisory officer of any kind, … is not a proper party." *Id.* at 125 (emphasis in original). More recently, the Court rejected an argument, similarly made by Petitioner, that ICE Boston's FOD had "total control" over the petitioner and therefore was a proper respondent, finding such claim "unavailing" in *Tham,* 319 F. Supp. 3d at 576-577.

Other sessions of this Court similarly routinely hold that supervisory officials are not proper respondents to a habeas action. *See e.g., McPherson v. Holder*, No. 14-CV-30207-MGM, 2015 WL 12861171, at *2 (D. Mass. Mar. 4, 2015) (Explaining that "regardless of where petitioner was detained at the time of filing, under First Circuit jurisprudence, Attorney General Eric Holder does not have day-to-day control over the facility where the petitioner is held. Thus, petitioner has not named the proper respondent, and on this basis alone, the petition may be dismissed without prejudice to its refiling with the correct respondent."); *Pen v. Sessions*, No. CV 17-10626-NMG, 2017 WL 2312822, at *1–2 (D. Mass. May 25, 2017) (Holding that "the

11

proper respondent is the warden of the institution where Pen was confined when the petition was filed. … The other persons identified as respondents are not proper parties to this action.").

As Petitioner is now detained in Louisiana, her failure to name her immediate custodian subjects her Amended Petition to dismissal. *See Tham*, 319 F. Supp. 3d at 577 (Explaining that for an ICE habeas petitioner detained in New Hampshire, the correct respondent is the Superintendent of that facility); *Faulkner v. US. Immigr. & Naturalization,* No. CV 22-12122-WGY, 2023 WL 3868437, at *2 (D. Mass. June 7, 2023) (Holding that "the proper respondent is the warden of the institution where Faulkner was confined when the petition was filed. Because Faulkner is [in Maryland], the proper respondent is the warden at this Maryland facility."); *Kantengwa*, 2020 WL 93955 at *1 ("Because Kantengwa was at the Strafford County Detention Center at the time she filed her petition (and remains there still), the proper respondent is Warden Brackett. The other persons identified as respondents are not proper parties to this action.").

### 2.  Petitioner failed to file in the district of confinement.

Because Petitioner was not detained in Massachusetts when she filed her original petition or her Amended Petition, this Court lacks jurisdiction over this action.  For a district court to have jurisdiction over a habeas petition, the individual holding custody must be "within [the court's] respective jurisdiction[]."  *Padilla*, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)); *Vasquez*, 233 F.3d at 690 (Explaining "that the court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody.").   As the Supreme Court has made clear, that means the district of confinement.  *Padilla*, 542 U.S. at 443.

Courts within this district routinely find that they do not have habeas jurisdiction when a petition is filed by a detainee outside Massachusetts.  *See Rombot*, 299 F. Supp. 3d at 218 ("A district court may only grant a petitioner relief when the court is located in the 'district of

confinement.'") (quoting *Padilla*, 542 U.S. at 443); *Tham*, 319 F. Supp. 3d at 577 ("jurisdiction lies in only one district: the district of confinement."); *Kantengwa*, 2020 WL 93955, at *2 ("Because the District of Massachusetts is not the district of Kantengwa's confinement, jurisdiction is lacking."); *Aitcheson v. Holder*, No. CV 15-11123-NMG, 2015 WL 10434871, at *2 (D. Mass. Dec. 31, 2015) (Finding no jurisdiction over a habeas petition filed by a petitioner when in the District, but who was moved to Alabama shortly after such filing because "1) [Massachusetts] is no longer petitioner's district of confinement and 2) only a respondent at the Detention Center in Alabama could bring the petitioner before a habeas court.").

Because Petitioner was transferred from Massachusetts before she filed the original petition, this Court never acquired jurisdiction and therefore "out not to … act[] on the merits" of her Amended Petition. *Vasquez*, 233 F.3d at 697.

### 3. No exceptional circumstances allow deviation from the district of confinement and immediate custodian rules.

The First Circuit did acknowledge that there could be "extraordinary circumstances" in which an official with supervisory control could be named as the respondent for an ICE detainee's habeas petition. *Vasquez*, 233 F.3d at 697. The First Circuit, however, found no "hint of anything that might qualify as an extraordinary circumstance" in that Mr. Vasquez was required to file his petition in the district of his confinement (Louisiana), even if that jurisdiction was considered a less hospitable judicial district for the detainee to present his claims. *Id.*

Here too, there are no extraordinary circumstances that make appropriate the naming of supervisory officials as respondents to this action or that ground jurisdiction with this Court. Petitioner's transfer out of Massachusetts was not done to manipulate jurisdiction or to detain her in an undisclosed location, rather it was done out of operational necessity. Wesling Decl., ¶¶ 6-8. After ICE arrested Petitioner at approximately 5:25 PM on March 25, ICE transferred

Petitioner out of Massachusetts to the ICE Field Office in St. Albans, Vermont because ICE does not maintain detention facilities in Massachusetts for females.  *Id.*, ¶¶ 6, 10-13.  ICE routinely transfers individuals arrested in one state to facilities in other states because of operational considerations such as bedspace and designation of risk categories.  *Id.*, 7.[5]

ICE's transfer of Petitioner to Vermont and then to Louisiana does not suggest "furtiveness" or "bad faith" as the First Circuit was concerned with in *Vasquez*.  Other courts have confronted comparable circumstances in which a petition was filed outside the district of confinement during transit between locations and have rejected arguments seeking exception to the immediate custodian and district of confinement rules.  For example, in *Ruvira-Garcia v. Guadian*, the court explained that there were "two big problems" with petitioner's request that the court order her return to Illinois: "Petitioner filed against the wrong people, in the wrong place."  No. 1:20-CV-2179, 2020 WL 1983875, at *1 (N.D. Ill. Apr. 17, 2020).  The petitioner in that case was not in Illinois when she filed her petition, "she apparently was en route between Texas and Oklahoma" and therefore the court found that this "isn't a case where the petitioner was here at the moment of filing, and then left.  She hasn't been in [Illinois] at any point since this case started."  *Id.*, at *3.  Even if it was "unclear whether the authorities in Texas, or the authorities in Oklahoma, had custody over her at the moment of filing," "if the choice is between Texas and Oklahoma, Illinois is the wrong answer."  *Id.*  The court found it lacked jurisdiction

---

[5] *See Russian scientist working at Harvard detained by ICE at Boston airport*, https://www.theguardian.com/us-news/2025/mar/27/russian-scientist-harvard-medical-school-ice-detention (Explaining that a female applicant for admission had her visa revoked on February 16, 2025 by U.S. Customs and Border Protection and then was transferred by ICE to a facility in Vermont prior to transfer to a facility in Louisiana).

but explained that "the continued detention of [p]etitioner by the Executive Branch is not immune from challenge … [p]etitioner simply can't challenge her detention [in Illinois], as Congress made clear." *Id.*

In another case, while recognizing that transfers of an ICE detainee between states presented "unusual logistical circumstances," the court explained that "it is not this Court's duty to ascertain or identify an Arizona official who would be correctly named as a respondent in this case" and concluded that "there is no recognized exception to the immediate custodian rule for inconvenience or exigent circumstances." *Fuentes v. Choate*, No. 24-CV-01377-NYW, 2024 WL 2978285, at *9-10 (D. Colo. June 13, 2024). Similarly, in *Khalil v. Joyce*, --- F.Supp.3d ---, 2025 WL 849803, (S.D.N.Y. Mar. 19, 2025), a case that also involved an ICE arrest in New York, a transfer to a facility in New Jersey, and then an eventual transfer to Louisiana, the Southern District found it lacked jurisdiction because even though petitioner was arrested in New York, he was in New Jersey when he filed his petition. *Id.*, at *2.

These cases demonstrate that even with an arrest in one district followed by a transfer to another district, a habeas petitioner must file her petition in the district of confinement and must name her immediate custodian as respondent. Simply because a detainee is transferred to another district post-arrest does not suggest bad faith underlying the transfer. *See Khalil*, 2025 WL 849803, at *10 (The "swift nature of Khalil's transfer does not help his argument … [as] rapid transfers from one immigration detention facility to another also appear to be common"). The traditional immediate custodian and district of confinement rules apply in this case and as such, the Petition must be dismissed.

**B. Even if the Original Petition was Properly Filed, this Court Lacks Jurisdiction to Review the Challenged Executive Actions.**

Even if properly filed, this action must still be dismissed as the Court lacks jurisdiction over Petitioner's challenges to the revocation of her visa and her subsequent arrest, detention, and initiation of removal proceedings.

**1. District courts lack jurisdiction to review the Department of State's revocation of visas.**

Petitioner asserts that the revocation of her student visa was unlawful and therefore her arrest and detention are illegal. Doc. No. 12, ¶¶ 4-5. Her challenge to the revocation of her visa cannot be heard by this Court, however, as 8 U.S.C. § 1201(i) specifically states that there "shall be no means of judicial review" including habeas review, "except in the context of removal proceedings if such revocation provides the sole ground for removal". Here, ICE issued Petitioner with a NTA initiating removal proceedings on account of her revoked visa and she can seek judicial review before an Immigration Court, the BIA, and eventually to a court of appeals if she is ordered removed.

As explained by another district court when dismissing a petition which challenged a visa revocation on account of a political dispute: "Congress has taken it out of my hands. … I cannot address this argument because I lack subject matter jurisdiction over the case. The legality of petitioner's detention depends on the resolution of such issues as whether the government lawfully revoked his visa and whether he is removable from the United States and, as indicated above, I am precluded from reviewing those issues." *Bolante v. Achim*, 457 F. Supp. 2d 898, 902 (E.D. Wis. 2006). The court also found the Suspension Clause not implicated because "the government has initiated removal proceedings" and a circuit court could review a challenge to the visa revocation upon a petition for review. *Id.* at 902-03, n.6; 8

U.S.C. § 1252(a)(2)(D) (Explaining that judicial review remains available for "constitutional

claims or questions of law raised upon a petition for review).

Other courts also routinely find themselves without jurisdiction to consider the merits of

a visa revocation upon operation of Section 1201(i)'s language.  *See e.g.*, *Aldabbagh v. Sec'y of*

*State*, No. 6:21-CV-532-GAP-EJK, 2021 WL 6298664, at *2 (M.D. Fla. Oct. 5, 2021) (Finding

no jurisdiction over complaint that asked court to declare revocation of visa to be arbitrary and

capricious, an abuse of discretion, and not in accordance of law.); *Tarlinsky v. Pompeo*, No.

3:19-CV-659 (VLB), 2019 WL 2231908, at *5 (D. Conn. May 23, 2019) ("As the basis for [the

visa] revocation is expressly non-reviewable by statute, the [c]ourt lacks subject matter

jurisdiction over" the complaint.).   To the extent Petitioner seeks review of the State

Department's revocation of her visa, this Court lacks jurisdiction to consider her claims.

### 2.    District courts lack jurisdiction over ICE's decisions to commence removal proceedings and to detain aliens for such proceedings.

Petitioner's claim that ICE's decision to initiate removal proceedings and arrest and

detain her violated her constitutional rights is not subject to this Court's review under the INA.

    a.  *8 U.S.C. § 1252(g) bars judicial review of ICE's decision to commence removal proceedings against Petitioner.*

Congress, through the REAL ID Act, made clear that district courts do not have

jurisdiction to consider challenges to ICE's discretionary decisions concerning the

commencement of removal proceedings.  Specifically, 8 U.S.C. § 1252(g) strips courts of

jurisdiction to hear "any cause or claim by or on behalf of an alien arising from the decision or

action by [ICE] to *commence proceedings* … against any alien under this chapter."  (emphasis

added).  Section 1252(g) is "directed against a particular evil: attempts to impose judicial

constraints upon [certain categories of] prosecutorial discretion."  *Reno v. Am.-Arab Anti-*

*Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999).  Section 1252(g) plainly applies to decisions and actions to *commence* proceedings that ultimately may end in the execution of a final removal order.  *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g) . . . to include not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding."); *Obado v. Superior Ct. of New Jersey Middlesex Cnty.,* No. CV 21-10420 (FLW), 2022 WL 283133, at *3 (D.N.J. Jan. 31, 2022) ("Because [p]etitioner challenges the decision to commence and adjudicate removal proceedings against him, the [c]ourt lacks jurisdiction to direct [respondents] to terminate [p]etitioner's NTA and/or halt his removal proceedings.").

    In addition to barring challenges to *whether* and *when* to commence proceedings, § 1252(g) bars district courts from hearing challenges to the *method* by which ICE chooses to commence removal proceedings.  *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take him into custody and to detain him during removal proceedings"); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest [petitioner], clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g).").

    As Section 1252(g) prohibits judicial review of "any cause or claim" that arises from the commencement of removal proceedings, this provision applies to constitutional as well as statutory claims.  *Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019) (Explaining that a petitioner's "attempt to frame his claim in due process language does not change [the] result" that Section 1252(g) strips jurisdiction.); *Anderson, v. Moniz*, No. CV 21-11584-FDS, 2022 WL

375231, at *4 (D. Mass. Feb. 7, 2022) ("Section 1252(g) can serve as a jurisdictional bar even when a petitioner contends that his due-process rights were violated.").

That Petitioner is alleging her removal proceedings were initiated in retaliation for her exercise of the First Amendment does not remove her claim from Section 1252(g)'s reach. *See Reno,* 525 U.S. at 487-92 (holding that Section 1252(g) deprived district court of jurisdiction over claim that certain aliens were targeted for deportation in violation of the First Amendment.); *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007) (Explaining that First Amendment challenge related to immigration enforcement action "is properly characterized as a challenge to a discretionary decision to 'commence proceedings' … [and] is insulated from judicial review".); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (determining that § 1252(g) prohibited review of an alien's First Amendment claim based on decision to put him into exclusion proceedings); *Vargas v. United States Dep't of Homeland Sec.*, No. 1:17-CV-00356, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) (Claim that ICE "violated her First Amendment right to free speech by arresting her and initiating her removal after she made statements to the media … is barred by 8 U.S.C. § 1252(g)."); *Kumar v. Holder*, No. 12-CV-5261 SJF, 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013) (Claim of initiation of proceedings in retaliatory manner "falls squarely within Section 1252(g) … [and] that [t]he pending immigration proceedings are the appropriate forum for addressing petitioner's retaliation claim in the first instance.").  As such, judicial review of Petitioner's claim that commencement of removal proceedings is unconstitutional is barred by Section 1252(g).

b. *8 U.S.C. § 1226(e) bars judicial review of ICE's decision to arrest and detain Petitioner.*

ICE's arrest and detention of Petitioner is authorized by 8 U.S.C. § 1226(a) which allows detention "pending a decision on whether [she] is to be removed from the United States."

19

8 U.S.C. § 1226(a).  This provision "creates authority for *anyone's* arrest or release under §

1226—and it gives the Secretary broad discretion as to both actions…."  *Nielsen v. Preap*, 586

U.S. 392, 409 (2019) (emphasis in the original).  Petitioner's assertion that her detention is

unlawful is not properly before this Court as Congress has made clear that ICE's "discretionary

judgment regarding the application of [Section 1226] shall not be subject to review."  8 U.S.C.

§ 1226(e).  Section 1226(e) further commands that "[n]o court may set aside any action or

decision by [ICE] under this section regarding the detention of any alien or the revocation or

denial of bond or parole."  *Id.*  As the Supreme Court explained in *Demore v. Kim*, 538 U.S.

510, 516-17 (2003), this provision blocks judicial review of ICE's discretionary judgments and

decisions to arrest and detain aliens subject to 8 U.S.C. § 1226.  *See also Jennings v. Rodriguez*,

583 U.S. 281, 295-96 (2018) (Section "1226(e) precludes an alien from challenging a

discretionary judgment by the [Secretary] or a decision that the [Secretary] has made regarding

his detention or release.") (cleaned up).

Petitioner asserts her detention "is unjustified" because the Government has not

demonstrated that she "needs to be detained."  Doc. No. 12, ¶ 73.  This Court, however, is not the

forum for such a claim.  Instead, Petitioner must request release from an immigration judge, and

if dissatisfied with the outcome, to the BIA.[6]  She further asserts that her detention is punitive and

that there is no legitimate purpose for detaining her.  *Id.*, ¶ 74.  This argument fails, however, as

she is detained for purpose of removal proceedings and the Supreme Court has upheld the

constitutionality of detention such purpose, even when such detention is mandatory and does not

---

[6] After ICE makes the initial decision to detain an alien, the alien may request a bond
hearing in Immigration Court and can appeal to the BIA if necessary.  8 C.F.R. § 236.1(d)(1)-
(3).

allow access to a bond hearing, as Petitioner is entitled to in this case. *Demore,* 538 U.S. at 523 (The "Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process.");[7] *Wong Wing v. U.S.* 163 U.S. 288, 235 (1896) (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character."); *Hernandez-Lara v. Lyons,* 10 F.4th 19, 32 (1st Cir. 2021) (Recognizing that the "prompt execution of removal orders is a legitimate governmental interest which detention may facilitate.") (cleaned up). If mandatory detention without access to a bond hearing passes constitutional muster, then Petitioner's detention, where she can seek a bond hearing, certainly does not implicate due process concerns. To the extent that Petitioner is basing her claim on *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring) or *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), those claims are related to prolonged detention and are not available until immigration detention exceeds a minimum of six months. *See Demore*, 538 U.S. at 510 (affirming constitutionality of detention exceeding six months); *Zadvydas*, 533 U.S. at 693 (adopting six months as a presumptively reasonable period of detention following a final order of removal). As such, this Court lacks jurisdiction over ICE's decision to arrest and detain Petitioner.

3.  **Petitioner's challenge to removal from the United States must proceed administratively before being raised to the circuit court.**

Petitioner has an opportunity to contest the initiation of her removal proceedings and to challenge her removal from the United States in Immigration Court, before the BIA, and eventually, if necessary, before a court of appeal. District courts, however, play no role in such process as made clear by Congress and the First Circuit. In passing the REAL ID Act, Congress

---

[7] The Supreme Court has recognized that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522 (citations omitted).

prescribed a single path for judicial review of orders of removal entered through the administrative process: "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5); *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020). A circuit court can consider "constitutional claims or questions of law" in the petition for review. 8 U.S.C. § 1252(a)(2)(D).

Congress, however, channeled to the courts of appeals, not just challenges to the removal decision, but also to challenges to the removal process. *Aguilar et al., v. USICE, et al.*, 510 F.3d 1, 9 (1st Cir. 2007) (Section 1252(b)(9) "was designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively with the courts of appeals.") (emphasis in the original). Per Section 1252(b)(9), "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* …. shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added); *Gicharu*, 983 F.3d at 16 ("Adding belt to suspenders, section 1252(b)(9) strips federal courts of jurisdiction to decide legal and factual questions arising from an alien's removal in any other context, *including on a petition for a writ of habeas corpus*.") (emphasis added). The First Circuit has described the expanse of § 1252(b)(9) as "breathtaking" and "vise-like". *Aguilar*, 510 F.3d at 9. In passing this provision, "Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings." *Id.*

Pursuant to these provisions, Petitioner must present removability issues related to the revocation of her visa administratively before any Article III review. As explained earlier, 8

U.S.C. § 1201(i) allows for judicial review of her visa's revocation in the context of removal proceedings if the revocation is the sole basis for removal (which it is here) and therefore Section 1252(a)(5) and (b)(9) channel any claims related to the revocation of her visa to an immigration judge, the BIA, and eventually to the circuit court.  In a recent case filed seeking a Temporary Restraining Order filed by a student whose visa had been revoked, the plaintiff, Mr. Taal, alleged that the visa revocation and ICE's initiation of removal proceedings violated his First Amendment rights.  *Taal v. Trump,* No. 3:25-CV-335 (ECC/ML), 2025 WL 926207, at *2 (N.D.N.Y. Mar. 27, 2025).  The district court, however, found that the plaintiff had not established it had jurisdiction over such claims due to Section 1252(a)(5) and 1252(b)(9).  *Id.* The court explained that Mr. Taal's "challenge to the basis for commencing his removal proceedings," "is part of the process by which … removability will be determined, and Taal's claims therefore arise from the removal proceedings."  *Id.* (cleaned up).

Because Petitioner can challenge the revocation of her visa administratively and eventually to a circuit court, this Court lacks jurisdiction over such claims.  *See Vega-Del Roquel v. Barr,* 568 F. Supp. 3d 73, 76 (D. Mass. 2021) (Explaining that "[o]nly claims that are not related in any way to the removal process are beyond the scope of [Section 1252(b)(9)] and therefore within the jurisdiction of federal courts.").

### C.  Petitioner's APA Claim Fails.

Petitioner fails to demonstrate any merit to her claims brought under the APA and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954).   The APA provides a right to judicial review of "final agency action for which there is no other adequate remedy." *Bennett v. Spear*, 520 U.S. 154, 175 (1997).  However, the APA does not "afford an implied grant of subject-matter jurisdiction

permitting federal judicial review of agency action" in all circumstances. *Califano v. Sanders*, 430 U.S. 99, 107 (1977).

The APA does not apply where another statute "preclude[s] judicial review." 5 U.S.C. § 701(a)(1). Additionally, Section 701(a)(2) of the APA precludes judicial review where agency action is committed to agency discretion by law. As such, judicial review of the State Department's revocation of Petitioner's visa is precluded under the APA since 8 U.S.C. § 1201(i) vests such revocation in the Secretary of State and prohibits judicial review aside from in removal proceedings. *See Mansur v. Albright,* 130 F. Supp. 2d 59, 61 (D.D.C. 2001) ("Without such statutory or regulatory limitation, there is no law to apply to the Secretary's discretionary revocation, and this court lacks jurisdiction to review the revocation …"). Similarly, ICE's decisions to commence removal proceedings and arrest and detain Petitioner were all discretionary decisions not subject to APA review by this Court on account of 8 U.S.C. §§ 1252(g) and 1226(a), (e). *See Gicharu*, 983 F.3d at 20 ("Having concluded that Gicharu's APA claim and habeas claim both arise form his removal proceedings, we hold that the district court lacked subject matter jurisdiction over those claims under section 1252(b)(9).").

Additionally, the APA does not authorize judicial review until "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros,* 509 U.S. 137, 146 (1993). Even if Petitioner could identify a final agency action, that agency action would be directly tied to the State Department's decision to revoke her visa and ICE's decision to initiate removal proceedings against her, which must be brought in removal proceedings. Because Petitioner has an alternative forum for her claim, it is not cognizable under the APA before this Court. *See Bennett*, 520 U.S. at. 175–77; *Pataud v. United States Citizenship & Immigr. Servs., Bos. Field Off.*, 501 F. Supp. 3d 22, 27 (D. Mass. 2020) (with removal

proceedings initiated, review of immigration application not available under the APA); *A.Z. v. Nielson*, No. CV 18-10511-PBS, 2018 WL 5269990, at *5 (D. Mass. Oct. 23, 2018) (agency decision denying immigration application is not a "reviewable final agency action as long as the alien was referred to immigration court for removal proceedings."); *Gao v. Napolitano*, 2009 WL 961243, at *2 (D. Mass. 2009) (same).

Petitioner also complains that the notice ICE issued regarding her terminated Student and Exchange Visitor Information System ("SEVIS") record improperly invoked a ground of removability from the United States Petitioner refers to as the "Foreign Policy Ground" which is contained at INA Section 237(a)(4)(C)(i) and that the Secretary of State failed to make the necessary determination that supports such ground of removability. Doc. No. 12, ¶¶ 79-83. This claim is without merit, however. ICE did not allege on the NTA that she is subject to removal under INA Section 237(a)(4)(C)(i) and the charges referenced on the SEVIS notice are not the basis for her detention or removal. *See* Doc. No. 12-2, NTA. For these reasons, Petitioner's APA claims fail.

### D.  Petitioner's Request for Bail should be Denied.

This Court does not have jurisdiction to issue habeas relief in this matter, and therefore lacks the authority to grant bail or release. Petitioner is correct that the First Circuit has explained "that a district court entertaining a petition for habeas corpus has inherent power to release the petitioner pending determination of the merits." *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam); *see also Savino v. Souza*, 453 F. Supp. 3d 441, 453 (D. Mass. 2020) (In face of COVID-19 pandemic, finding bail appropriate if a habeas petitioner can demonstrate that the petition raises substantial claims and that extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective).

To whatever extent this Court has the authority to grant bail pending habeas, that authority is only in aide of this Court's ultimate power to grant habeas relief.  So where, as here, this Court lacks the authority to grant habeas relief in the first place (as explained above), it concomitantly loses its authority to grant bail.  For the reasons argued previously, Petitioner fails to raise substantial constitutional claims upon which she has a high probability of success. Further, Petitioner fails to allege that extraordinary circumstances exist making the grant of bail necessary to render the habeas remedy effective.  On this issue, the First Circuit in *Woodcock* cited "a health emergency" as exceptional circumstances.  470 F.2d at 94.  The Court in *Savino* found existence of exceptional circumstances with the COVID-19 "nightmarish pandemic." 453 F. Supp. 3d at 453.  Petitioner's asthmatic condition and her desire to speak freely and openly does not represent exceptional circumstances as her concerns are likely common to all detainees experiencing limits on freedom and she does not demonstrate that her circumstances make the grant of bail necessary at this time.  Petitioner can also seek a bond hearing with the Immigration Judge at her first hearing in Immigration Court next week on April 7, 2025.[8]  Accordingly, the Court must decline Petitioner's request for interim release during the pendency of this action.

**E.  If this Court determines transfer to be in the interest of justice, this Amended Petition should be transferred to Petitioner's District of Confinement.**

As explained above, this Court should dismiss the Petition rather than transfer it because any receiving court, like this Court, would lack jurisdiction to consider Petitioner's claim of

---

[8] Petitioner cites the Second Circuit's decision in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001) in support of her request for release on bail, but this decision does not aide Petitioner's argument.  In that case, the court explained the power to admit on bail "is a limited one, to be exercised in special cases only." *Mapp*, 241 F.3d at 226.  Further, the court qualified this holding as subject to limits imposed by Congress. *Id.* at 223.  As explained earlier, 8 U.S.C. § 1226(e) is an "express statutory constraint[]" that limits the Court's authority in this context.  *Mapp*, 241 F.3d at 231

unlawful arrest and detention and to provide her requested relief.  As such, "the interest of justice" does not compel transfer.  28 U.S.C. § 1404(a).  But, if this Court determines otherwise, the Amended Petition must be transferred to Petitioner's district of confinement, the Western District of Louisiana.  *See also* 28 U.S.C. § 1406(a) (recognizing that transfer can occur to "any district … in which it could have been brought.").

The Supreme Court has recognized a "limited" exception to the district-of-confinement rule, namely, only "when the Government moves a habeas petitioner after she *properly files* a petition naming her immediate custodian."  *Padilla*, 542 U.S. at 441 (emphasis added) (discussing *Ex Parte Endo*, 323 U.S. 283 (1944)); *see Vasquez*, 233 F.3d at 697 (Distinguishing *Endo* from circumstances in *Vasquez* where the "petitioner filed for habeas relief in a jurisdiction where neither he nor his immediate custodian was physically present."); *Yancey v. Warden, FMC Devens*, 682 F. Supp. 3d 97, 100 (D. Mass. 2023) (collecting cases for proposition that after a petitioner properly filed a petition, such "prisoner's transfer after a district court's jurisdiction attaches does not defeat jurisdiction … as long as there remains in the district a respondent who can effectuate any court order.").  Under those circumstances, the court where jurisdiction originally vested may retain the case.  That limited exception does not apply in this District as Petitioner never properly filed a habeas petition in this Court.

This exception would also not apply concerning venue in the District of Vermont because Petitioner did not properly file her habeas petition with that Court during her brief detention in Vermont.  Where a court never *had* habeas jurisdiction in the first place because the petitioner was not in the district when the action was filed, or because the petition was not filed with the court in the district of confinement, there is nothing to retain.  It is true that at the time Petitioner's original petition was filed, it could have been properly filed in Vermont as that is

27

where she was then in custody.  But this fact is not dispositive.  While this case "could have been brought" in Vermont at the time of filing, that does not mean it can be heard in the District of Vermont here and now.  And it cannot, under *Padilla*—or the specific statutory text it interpreted.  Section 2241(a) states that writs of habeas corpus "may be granted by … the district courts … within their respective jurisdictions."  Section 1406(a) can permit transfer but only if the transferee court would also have subject matter jurisdiction over the matter.  Nothing in § 1406(a)'s general authorization for transfer displaces those specific conditions for habeas relief or purports to vest the District of Vermont with jurisdiction that would not otherwise exist.  The District Court in Vermont never had jurisdiction over this matter, and it cannot exercise jurisdiction over it now, even if this Court transferred the case to it.  *See Padilla*, 542 U.S. at 441-42.  Even if that transfer statute technically permitted transfer to Vermont as a matter of civil procedure, that does not somehow vest the District of Vermont with the statutory authority to issue a specific remedy—and do so notwithstanding the specific preconditions for such relief. Put otherwise, for the District of Vermont to award habeas relief under 2241(a), it must have "jurisdiction" to do so—as construed by *Padilla*.  Nothing in the transfer statutes alters that limitation.

The "default rule" articulated in *Padilla* controls here: "jurisdiction lies in only one district: the district of confinement".  542 U.S. at 433.  This means Petitioner's Amended Petition should have been filed in her district of confinement, the Western District of Louisiana, and any transfer of this Petitioner must be to such district.

## CONCLUSION

For these reasons, this Court lacks jurisdiction over the Petitioner and must therefore deny the request to issue a writ of habeas corpus.  Respondents further assert that transfer of this

Petition, rather than dismissal, would not be "in the interest of justice" because district courts lack jurisdiction to review the issues presented in the Petition and to order relief as requested. But, if the Court determines transfer appropriate, such transfer must be to the Western District of Louisiana, the district of Petitioner's confinement.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: April 1, 2025            By:    */s/ Mark Sauter*
                                       Mark Sauter
                                       Assistant United States Attorney
                                       United States Attorney's Office
                                       1 Courthouse Way, Suite 9200
                                       Boston, MA 02210
                                       Tel.: 617-748-3347
                                       Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  April 1, 2025            By:    */s/ Mark Sauter*
                                        Mark Sauter
                                        Assistant United States Attorney